Case No. 24-11799-D

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

RICKY JOHNSON,

Plaintiff-Appellant,

v.

HEATHER TURNER, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
District Court Case No. 5:16-cv-00453-TES-MSH

## <u>BRIEF OF APPELLANT</u>

Manoj S. Varghese
Jeffrey W. Chen
Amanda D. Bradley
BONDURANT MIXSON
& ELMORE LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
varghese@bmelaw.com
chen@bmelaw.com
bradley@bmelaw.com

*Attorneys for Plaintiff-Appellant Ricky Johnson*

#5076945v1

Case No. 24-11799-D
*Ricky Johnson v. Heather Turner, et al.*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE**

**DISCLOSURE STATEMENT**

In accordance with Eleventh Circuit Rules 26.1-1 through 26.1-3, counsel for Plaintiff-Appellant Ricky Johnson certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations (including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party) that have an interest in the outcome of this particular case or appeal:

- Alvarado, Donna M. - Member of Board of Directors for CoreCivic, Inc.

- Bradley, Amanda D. - Counsel for Plaintiff-Appellant Ricky Johnson

- Barrow, Donald

- Bondurant Mixson & Elmore LLP - Counsel for Plaintiff-Appellant Ricky Johnson

- Brooks, J. Kyle - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Butler Snow LLP - Counsel for Defendant-Appellee Kevin Marler and Melody Turner

C-1

#5076945v1

- Carr, Christopher M. - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Carter, Allen

- Chalmers, Roger A. - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Chaudhary, Ayaz

- Chen, Jeffrey W. - Counsel for Plaintiff-Appellant Ricky Johnson

- CoreCivic, Inc. - Employer and/or former employer of Defendant-Appellee Kevin Marler and Melody Turner. CoreCivic, Inc. is a successor corporation by name change of Corrections Corporation of America. ***CoreCivic, Inc. is a publicly traded company using the symbol CXW on the New York Stock Exchange***.

- Cuismano, Ellen - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Dennis, Robert J. - Member of Board of Directors for CoreCivic, Inc.

- DiStanislao, Phillip Thomas - Counsel for Defendant-Appellee Kevin Marler

- Durling, Gabrielle - Counsel for Plaintiff-Appellant Ricky Johnson

- Emkes, Mark A. - Chairman of Board of Directors for CoreCivic, Inc.

#5076945v1

- Ferrell, Joy – Personal Representative of The Estate of Thomas Ferrell, Defendant

- Ferrell, Thomas – Defendant

- Greene, Jordan L. - Counsel for Plaintiff-Appellant Ricky Johnson

- Hart, Derrell James

- Hininger, Damon T. - Member of Board of Directors for CoreCivic, Inc.

- Hylton, Stacia - Member of Board of Directors for CoreCivic, Inc.

- Hyles, Hon. M. Stephen - United States Magistrate Judge

- Johnson, Glen

- Johnson, Ricky - Plaintiff-Appellant

- Kirkland & Ellis LLP - Counsel for Plaintiff-Appellant Ricky J. Johnson

- Lappin, Harley G. - Member of Board of Directors for CoreCivic, Inc.

- Lewis, E. Righton J. - Counsel for Defendant-Appellee Kevin Marler and Melody Turner

- Lewis, Sharon - Defendant

- Mariucci, Anne L. - Member of Board of Directors for CoreCivic, Inc.

- Marler, Kevin - Defendant-Appellee

- Marshall, Thurgood Jr. - Member of Board of Directors of CoreCivic, Inc.

C-3

#5076945v1

- McKinnon, Constance L. - Counsel for Plaintiff-Appellant Ricky Johnson

- Merriam, Darina - Counsel for Plaintiff-Appellant Ricky Johnson

- Mitchell, Kasdin M. - Counsel for Plaintiff-Appellant Ricky Johnson

- Mohammad

- Montgomery, Lemuel E. - Counsel for Defendant-Appellee Kevin Marler

- Moore, Christi R. - Counsel for Defendant-Appellee Kevin Marler

- Morris, Anna Little - Counsel for Defendant-Appellee Kevin Marler

- Murphy, Devin - Member of Board of Directors for CoreCivic, Inc.

- Overby, Charles L. - Member of Board of Directors for CoreCivic, Inc.

- Pacious, Kathleen M. - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Petrany, Stephen J. - Counsel for Sharon Lewis and Joy Ferrell

- Prann, John R. Jr. - Member of Board of Directors for CoreCivic, Inc.

- Pinson, Andrew - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Rajavuori, Derek S. - Counsel for Defendant-Appellee Kevin Marler and Melody Turner

- Self, Hon. Tilman III - United States District Judge

C-4

#5076945v1

- Stay, Ronald J. - Counsel for Defendant Sharon Lewis, Defendant Thomas Ferrell, and Glen Johnson

- Tatum, Clayton

- Toole, Thomas Robert

- Turner, Melody

- Varghese, Manoj S. - Counsel for Plaintiff-Appellant Ricky Johnson

- Waller, Nia Nzinga - Counsel for Defendants Sharon Lewis and Thomas Ferrell

- Ward, Timothy C. - Commissioner of the Georgia Department of Corrections

## Corporate Disclosure Statement

Pursuant to 11th Cir. R. 26.1-3(b), Counsel for Plaintiff-Appellant Ricky Johnson certify, aside from CoreCivic, Inc., no publicly traded company or corporation has an interest in the outcome of this case.

C-5

#5076945v1

## STATEMENT REGARDING ORAL ARGUMENT

This appeal arises out of a successful civil rights action.  Appellant Ricky Johnson, a Georgia prisoner, prevailed at trial on his claim that Appellees had been deliberately indifferent to his Hepatitis C in violation of the Eighth Amendment. After being awarded monetary damages by the jury, Appellant moved for prevailing-party attorneys' fees pursuant to 42 U.S.C. § 1988.  Applying the limitations on such attorneys' fees set forth by the Prison Litigation Reform Act ("PLRA"), *see* 42 U.S.C. § 1997e(d), the district court ruled that Appellant was not entitled to his full reasonable attorneys' fees.  This appeal challenges that determination.

Appellant respectfully requests oral argument and submits that it would be useful to the Court.  This case raises novel challenges to the constitutionality of the PLRA's fee restrictions.  While this Court has ruled that the § 1997e(d) limits on a prisoner plaintiff's § 1988 attorneys' fees do not violate equal protection when prisoners are compared to unincarcerated individuals, *see Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 799 (11th Cir. 2003), the Court has not addressed whether the § 1997e(d) limits on a prisoner plaintiff's § 1988 attorneys' fees violate equal protection when prisoners who receive an award of monetary damages are compared to those who receive an award of injunctive or declaratory relief.  Nor has this Court considered the constitutionality of any of § 1997e(d)'s restrictions in the

vi

context of certain controlling Supreme Court case law.[1]  Because this appeal presents questions of first impression in this Circuit, oral argument may assist the Court by providing it with a better opportunity to understand the parties' arguments before deciding these previously unresolved issues.[2]

Moreover, this appeal involves serious constitutional violations.  Beyond the equal protection violations in 42 U.S.C. § 1997e(d) (*i.e.*, the primary subjects of this appeal), the underlying Eighth Amendment violations in this case—which Appellant proved at trial—arose from Appellees' half-decade-long denial of medical treatment for Appellant's Hepatitis C.  And as this Court recognized in Appellant's prior appeal in this same case, Hepatitis C "is an objectively serious medical need."[3]  Because this appeal involves serious constitutional violations, oral argument may assist this Court by ensuring that important issues are not missed.[4]

Finally, the undersigned counsel is a young lawyer who graduated from law school less than five years ago.  Having oral argument in this case would allow the

---

[1] *See, e.g., Moreno*, 413 U.S. 528; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).

[2] *Cf. Rose v. Hodges*, 423 U.S. 19, 26 (1975) (Brennan, J., dissenting) ("More importantly, the issue is one of first impression in this Court, and it surely merits briefing and oral argument.").

[3] *Johnson v. Lewis*, 83 F.4th 1319, 1328 (11th Cir. 2023).

[4] *Cf. Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (Stevens, J., dissenting) ("Whenever this Court acts summarily, there is an increased risk that it will make a mistake. Without the benefit of full briefs and oral argument, an important issue may escape our attention.").

#5076945v1

undersigned counsel to gain valuable experience and contribute to the career development and advancement of the next generation of lawyers.

For these reasons, Appellant asks that the Court grant oral argument.

#5076945v1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT .................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...............................................vi

STATEMENT OF JURISDICTION....................................................................1

INTRODUCTION ...........................................................................................2

STATEMENT OF THE ISSUE.........................................................................6

STATEMENT OF THE CASE..........................................................................7

    I.      Statement of Facts ........................................................................7

    II.     Procedural History.......................................................................9

    III.    Statutory Background.................................................................10

    IV.    Standard of Review ....................................................................14

SUMMARY OF THE ARGUMENT .................................................................14

ARGUMENT AND CITATION OF AUTHORITY ..............................................16

    I.      The district court erred by applying 42 U.S.C. § 1997e(d) to Appellant's attorney fee request under 42 U.S.C. § 1988 because § 1997e(d)'s limits on prisoners' attorney fee awards are unconstitutional. ...................................................................16

           A.     The Fifth Amendment guarantees equal protection of the laws to all persons, including prisoners ....................................18

           B.     42 U.S.C. § 1997e(d) violates Plaintiff's right to equal protection ..............................................................................20

    II.     The district court erred in holding that Appellant forfeited the argument that he is entitled to his full reasonable attorneys' fees

#5076945v1

under § 1988 specifically because § 1997e(d)'s restrictions on attorneys' fees are unconstitutional............................................................28

III.  Even if this Court finds that Appellant forfeited the purported "issue" of 1997e(d)'s constitutionality, this Court should still consider the issue................................................................................33

CONCLUSION ...............................................................................................38

x

# TABLE OF AUTHORITIES

**<u>Cases</u>**:

*Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.*,
  677 F.3d 1286 (11th Cir. 2012) ................................................................35, 37

*Alyeska Pipeline Service Co. v. Wilderness Society,*
  421 U.S. 240 (1975)......................................................................................22

*Baldwin County Welcome Ctr. v. Brown*,
  466 U.S. 147 (1984)..................................................................................... vii

*Black v. Ala. Dep't Corr.*,
  578 F. App'x 794 (11th Cir. 2014)..................................................................2

*Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*,
  816 F.3d 1343 (11th Cir. 2016) .............................................................. 34-36

*Bourtzakis v. United States Att'y Gen.*,
  940 F.3d 616 (11th Cir. 2019) ......................................................................28

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)................. vii, 19, 24

*City of Riverside v. Rivera*,
  477 U.S. 561 (1986).......................................................................................24

*ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*,
  No. 22-10811, 2024 WL 3975776 (11th Cir. Aug. 29, 2024)........................14

*Foulk v. Charrier*,
  262 F.3d 687 (8th Cir. 2001) ........................................................................24

*Graham v. Richardson*,
  403 U.S. 365 (1971).......................................................................................27

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................. 22-23

#5076945v1

*Hormel v. Helvering*,
  312 U.S. 552 (1941)................................................................38

*In re Biscayne Park, LLC*,
  540 F. App'x 952 (11th Cir. 2013)..............................................36

*In re Daikin Miami Overseas, Inc.*,
  868 F.2d 1201 (11th Cir. 1989) ...................................................36

*In re Home Depot Inc.*,
  931 F.3d 1065 (11th Cir. 2019) ................................... 15, 28-30, 33

*Jackson v. State Bd. of Pardons & Paroles*,
  331 F.3d 790 (11th Cir. 2003) .......................... vi, 10, 23-24, 32, 37

*Johnson v. Lewis*,
  83 F.4th 1319 (11th Cir. 2023) .................................................. vii

*Jones v. Bock*,
  549 U.S. 199 (2007)..................................................................13

*Jones v. Georgia Ports Auth.*,
  No. 22-12844, 2024 WL 470347 (11th Cir. Feb. 7, 2024)...........32

*Kontrick v. Ryan*,
  540 U.S. 443 (2004)..................................................................28

*Mathews v. Lucas*,
  427 U.S. 495 (1976)..................................................................19

*Mosby v. City of Byron, Georgia*,
  No. 5:20-CV-00163-TES, 2021 WL 297129 (M.D. Ga. Jan. 28,
  2021) ......................................................................................10

*Newman v. Piggie Park Enters.*,
  390 U.S. 400 (1968)..................................................................23

*Ohneck v. Comm'r*,
  Soc. Sec. Admin., No. 22-13984, 2023 WL 8946613
  (11th Cir. Dec. 28, 2023)..........................................................29

#5076945v1

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)............................................................................25

*Plyler v. Doe*,
    457 U.S. 202 (1982)............................................................................27

*Porter v. Nussle*,
    534 U.S. 516 (2002)............................................................................24

*Rinaldi v. Yeager*,
    384 U.S. 305 (1966)............................................................................27

*Romer v. Evans*,
    517 U.S. 620 (1996)......................................................................15, 18

*Rose v. Hodges*,
    423 U.S. 19 (1975)............................................................................ vii

*Smith v. Soc. Sec. Admin., Comm'r*,
    No. 22-11407, 2023 WL 6938521 (11th Cir. Oct. 20, 2023).................29, 32

*Troxler v. Owens-Ill, Inc.*,
    717 F.2d 530, 533 (11th Cir. 1983) ............................................................37

*U.S. Dep't of Agric. v. Moreno*,
    413 U.S. 528 (1973)................................................................ vii, 15, 19, 24

*United States v. Campbell*,
    26 F.4th 860 (11th Cir. 2022) ..........................................................16, 28, 34

*United States v. Horne*,
    789 F. App'x 139 (11th Cir. 2019)...............................................................14

*United States v. Viscome*,
    144 F.3d 1365 (11th Cir. 1998) ..................................................................36

*United States v. White*,
    593 F.3d 1199 (11th Cir. 2010) ..................................................................14

#5076945v1

*United States v. Windsor*,
  570 U.S. 744 (2013)..................................................................................18

*Vill. of Willowbrook v. Olech*,
  528 U.S. 562 (2000)..................................................................................19

*Walker v. Bain*,
  257 F.3d 660 (6th Cir. 2001) ...................................................................24

*Wolff v. McDonnell*,
  418 U.S. 539 (1974)................................................................................2, 4

*Woodford v. Ngo*,
  548 U.S. 81 (2006)....................................................................................24

**Statutes/Other**:

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1391 .........................................................................................1

42 U.S.C. § 1983 .................................................................................. 1-2, 9

42 U.S.C. § 1988 .................................................................. vi, 1, 3, 6, 9, 14-16

42 U.S.C. § 1997e(d) .................................................3-4, 6, 9, 14, 16, 20-21

42 U.S.C. § 1997e(d)(1)...........................................................................5, 21

42 U.S.C. § 1997e(d)(1)(B)(i).......................................................................4

42 U.S.C. § 1997e(h) ....................................................................................4

141 Cong. Rec. S14626 (1995 WL 573055) ...........................................12

141 Cong. Rec. S14626-29 (1995 WL 573055).......................................12

141 Cong. Rec. S14628 (1995 WL 573055) ................................... 12-13, 28

141 Cong. Rec. S7524-S7528 ...............................................................................12

Civil Rights Act of 1871 ........................................................................................1

Federal Rule of Appellate Procedure 4(a)(1)(A) ......................................................1

Fla. Stat. § 30.2905 ............................................................................................35

H.R. 2076, 104th Cong. (1995)..................................................................... 11-13

H.R. 3019, 104th Cong. (1996)...........................................................................13

Prison Litigation Reform Act of 1995, S. 866, 104th Cong. (1995) ................. 10-11

S. Amdt. 2838 to H.R. 2076, 104th Cong. (1995-1996)..........................................12

U.S. Const. amend. v.............................................................................................18

U.S. Const. amend. xiv, cl. 1. ................................................................................18

U.S. Const., Amend. VII.........................................................................................1

#5076945v1

**STATEMENT OF JURISDICTION**

This Court has subject matter and appellate jurisdiction to decide Appellant's appeal from the district court's judgment regarding attorneys' fees.

This Court has subject matter jurisdiction because this appeal involves Appellant's claims under the Civil Rights Act of 1871 and claims for violations of the United States Constitution, as well as Appellant's claim for prevailing-party attorneys' fees under 42 U.S.C. § 1988, all of which establish federal question jurisdiction.[5]

This Court also has appellate jurisdiction because, as Appellant explained in his response to this Court's jurisdictional question, *see* 11th Cir. Doc. 17, Appellant filed a timely notice of appeal from the district court's April 29, 2024 judgment.[6]

---

[5] *See* Doc. 1 (Compl.); Doc. 325 (Attorneys' Fee Pet.); 42 U.S.C. § 1983 (Civil Rights Act of 1871); U.S. Const., Amend. VIII (Cruel and Unusual Punishment Clause); 28 U.S.C. § 1391 (Federal Question Jurisdiction).

[6] *See* Doc. 342 (Apr. 29, 2024 Judgment); Doc. 344 (May 29, 2024 Notice of Appeal); 28 U.S.C. § 1291 (Final Judgment Rule); Federal Rule of Appellate Procedure 4(a)(1)(A) (notice of appeal in civil case must be filed "within 30 days after entry of the judgment or order appealed from").

1

#5076945v1

**INTRODUCTION**

*"There is no iron curtain drawn between the Constitution and the prisons of this country."[7] Indeed, "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime."[8]*

On October 12, 2016, Appellant Ricky Johnson sued Appellees pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in connection with Appellees' repeated failure to give Appellant his prescribed treatment for Hepatitis C[9] – a blood borne disease known to lead to "liver damage, cirrhosis, liver cancer, and liver failure."[10] With Appellees' failure leading to Appellant's worsening condition and the eventual cirrhosis of his liver,[11] Appellant sought injunctive relief, declaratory relief, and money damages.[12] At the time of his lawsuit, Appellant had been denied medical treatment for his Hepatitis C for over three years.[13] And he did not receive treatment until February 2018 – over a year after he filed suit.[14]

Nearly eight years after filing his lawsuit, on March 4, 2024, Appellant went to trial against Appellees Dr. Thomas Ferrell and Dr. Sharon Lewis.[15] After a three-

---

[7] *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974) (emphasis added).
[8] *Id.* at 555 (emphasis added).
[9] Doc. 1.
[10] *Black v. Ala. Dep't Corr.*, 578 F. App'x 794, 795 (11th Cir. 2014) (per curiam).
[11] *See* Doc. 144-4 at 72; Doc. 157-1 at 16.
[12] Doc. 1 at 10, 12.
[13] *See generally* Doc. 1.
[14] Doc. 101; Doc. 158 ¶ 46; Doc. 164 at 10.
[15] Doc. 314.

2

day trial, a jury returned a verdict in Appellant's favor, finding that Appellees had been deliberately indifferent to his Hepatitis C in violation of the Eighth Amendment.[16] The jury awarded Appellant $20,000 in damages as to Dr. Lewis and $1 in damages as to Dr. Ferrell.

On March 20, 2024, Appellant sought to recover his full reasonable attorneys' fees pursuant to 42 U.S.C. § 1988,[17] only to be faced with yet another constitutional violation – this time in the form of a federal statute. On April 26, 2024, the trial court ruled that, unlike all other prevailing plaintiffs under § 1983, Appellant was not entitled to recover his full reasonable attorneys' fees under § 1988 because he was incarcerated when he filed suit. Specifically, the trial court applied a different federal statute, 42 U.S.C. § 1997e(d), which limits attorneys' fee recovery for all incarcerated persons awarded money damages as a result of the violation of their civil rights.[18] Unlike all other § 1983 plaintiffs who prove a violation of their constitutional rights and are thus entitled to recover attorneys' fees under § 1988, Appellant was required under § 1997e(d) to contribute 25% of his monetary judgment to the payment of his fees, which were capped at 150% of his damages award.[19] And unlike all other § 1988 attorneys' fees, Appellant's attorneys' fees had

---

[16] Doc. 319.
[17] Doc. 325.
[18] Doc. 340.
[19] 42 U.S.C. 1997e(d)(2).

3

to be "proportionately related to the court ordered relief for [his] [constitutional] violation"[20] and calculated using an hourly rate tied to "the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."[21] In short, after proving that Appellees violated his constitutional right to be free from cruel and unusual punishment, Appellant was subjected to a statute that violated his right to equal protection under the Due Process Clause of the Fifth Amendment by discriminating against him based on his status as a prisoner who was awarded monetary damages in a civil rights lawsuit.

The Supreme Court has made expressly clear that "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination . . . [and] may also claim the protections of the Due Process Clause."[22] This appeal challenges on equal protection grounds the application of the attorneys' fee provision of the Prison Litigation Reform Act ("PLRA") generally and the application of the unconstitutional provision to Appellant specifically.[23] *See* 42 U.S.C. § 1997e(d). Targeting only meritorious "prisoner"[24] lawsuits involving

---

[20] *Id.* § 1997e(d)(1)(B)(i).

[21] *Id.* § 1997e(d)(3).

[22] *Wolff*, 418 U.S. at 556.

[23] *See* 42 U.S.C. § 1997e(d).

[24] As used in 42 U.S.C. § 1997e(h), "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

#5076945v1

monetary damages, this provision violates prisoners' rights to equal protection under the Due Process Clause of the Fifth Amendment in at least two ways – first, by treating prisoners, including Appellant, differently than unincarcerated litigants; and second, by treating prisoners who recover monetary damages in their lawsuits, including Appellant, differently than prisoners awarded injunctive or declaratory relief under the same circumstances.

The PLRA's fee provision is wholly arbitrary. § 1997e(d) is not limited to persons convicted of a crime; instead, the provision also touches any person *accused* of a crime who is confined to any correctional facility.[25] Further, the PLRA's attorney fee provision is not limited to lawsuits concerning prison conditions, as § 1997e(d) applies to "*any action* brought by a prisoner."[26] Indeed, if a previously incarcerated person files a civil rights lawsuit specifically related to prison conditions *after* his release from confinement, § 1997e(d) does not apply to him. Conversely, if a person suffers a constitutional violation while not incarcerated and then is subsequently imprisoned, he would be subject to § 1997e(d) if he filed a § 1983 action related to the prior constitutional violation *while imprisoned*. Moreover, § 1997e(d) applies only to incarcerated individuals who receive a monetary judgment, and it does not at all matter whether a plaintiff, like Appellant, also sought

---

[25] *Id.*

[26] *Id.* § 1997e(d)(1) (emphasis added).

declaratory or injunctive relief or whether a defendant's unconstitutional behavior stopped only after the plaintiff filed a lawsuit. The questions § 1997e(d) asks are (1) "is the plaintiff incarcerated?" and (2) "did the plaintiff receive monetary damages?" If the answer to both questions is "yes," then the plaintiff's entitlement to § 1988 fees is necessarily restricted under § 1997e(d).

At best, the PLRA's restrictions on attorneys' fees are wholly irrational for solely applying to prisoners who receive monetary damages. And at worst, they are impermissibly grounded in animus toward prisoners. Either way, this Court should hold § 1997e(d) unconstitutional and reverse the district court's application of the statute.

## STATEMENT OF THE ISSUE

This appeal presents the following issues:

(1)    Whether the district court erred when it applied 42 U.S.C. § 1997e(d)'s attorney fee restrictions to Appellant's request for his full reasonable attorneys' fees under 42 U.S.C. § 1988 because § 1997e(d) is unconstitutional.

(2)    Whether the district court erred in holding that Appellant forfeited the *argument* that he is entitled to his full reasonable attorneys' fees under § 1988 because § 1997e(d)'s restrictions on attorneys' fees are unconstitutional.

#5076945v1

(3)     Whether this Court should consider the constitutionality of §
1997e(d)'s restrictions on attorneys' fees regardless of whether the purported *issue*
of 1997e(d)'s constitutionality was forfeited.

## STATEMENT OF THE CASE

### I.     Statement of Facts

Appellant is a prisoner in the custody of the Georgia Department of
Corrections ("GDC").  In 2009, while incarcerated, he was diagnosed with Hepatitis
C.[27] Several years after his diagnosis, a gastroenterologist ordered a biopsy of his
liver.[28]  That biopsy showed that Appellant's Hepatitis C was worsening.[29]  In April
2013, based on Appellant's biopsy results, the gastroenterologist prescribed him
triple drug treatment.[30] At the time of this prescription, Appellant was under the care
of Appellee Dr. Ferrell at Ware State Prison.[31]

Over a year after Appellant received his prescriptions, Appellant had not
received any treatment, and his Hepatitis C continued to progress.[32] Concerned that
prison medical staff were ignoring his condition, Appellant lodged a formal
grievance: "I was approved for medical treatment for Hepatitis C . . . I submit that

---

[27] Doc. 1 at 4; Doc. 144-4 at 30.
[28] Doc. 144-4 at 37.
[29] *See id.* at 70 (showing Grade 2 inflammatory activity).
[30] *See id.* at 48.
[31] *See id.* at 2-12 (Dr. Ferrell's Declaration).
[32] *See id.* at 72.

7

medical staff is being deliberately indifferent to a serious medical need in violation of my 8th Amendment right against cruel & unusual punishment. I would like my treatment to begin immediately."[33]

Appellant's grievance was denied on the false assertion that he had never requested treatment for his Hepatitis-C. [34] Appellant appealed this denial to Appellee Dr. Lewis, GDC's Statewide Medical Director.[35] He explained that he had made "numerous requests" for treatment,[36] including a request dated at least January 20, 2012, when Appellant's physician wrote in his medical records: "HE HAS HCV AND WANTS TREATMENT."[37] Nonetheless, Dr. Lewis denied Appellant's grievance appeal, stating that "medical personnel handled this case appropriately" and "no further action is warranted."[38]

Ultimately, Appellant would not receive his prescribed treatment for nearly five years,[39] and his condition worsened, culminating in cirrhosis of the liver.[40]

---

[33] Doc. 144-3 at 13.
[34] *Id.* at 20.
[35] *Id.* at 21.
[36] *Id.*
[37] Doc. 144-4 at 36.
[38] Doc. 144-3 at 22.
[39] Doc. 101; Doc. 164 at 10.
[40] Doc. 157-1 at 16.

8

## II.     Procedural History

On October 12, 2016—when he had been denied his prescribed treatment for over three years—Appellant sued (as relevant here) Appellee Drs. Ferrell and Lewis, raising Eighth Amendment claims under 42 U.S.C. § 1983.[41] On March 4, 2024, Appellant went to trial against both Appellees.[42] A jury returned a verdict in Appellant's favor, finding that Appellees had been deliberately indifferent to Appellant's Hepatitis C.[43] The jury awarded Appellant $20,000 in damages as to Dr. Lewis and $1 in damages as to Dr. Ferrell.

On March 20, 2024, Appellant sought recovery of his full reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.[44] On April 26, 2024, the trial court ruled that, unlike all other § 1983 prevailing plaintiffs, Appellant was not entitled to recover his full reasonable attorneys' fees under § 1988 because 42 U.S.C. § 1997e(d) limited his fee recovery: "While the Court must consider the parties' arguments about whether the fees incurred and hours expended on Plaintiff's case are reasonable, the Court declines to ignore Congress' statutory cap on fees that has been discussed at length and—as of now—upheld by the Eleventh Circuit."[45]

---

[41] Doc. 1.
[42] Doc. 314.
[43] Doc. 319.
[44] Doc. 325.
[45] Doc. 340 at 1-2.

#5076945v1

In issuing its ruling, the trial court found that Appellant had forfeited the argument that he was entitled to his full reasonable attorneys' fees because § 1997e(d) was unconstitutional. However, the trial court still considered (and ruled on) Appellant's constitutionality argument. Indeed, the court held that the Eleventh Circuit's holding in *Jackson v. State Bd. of Pardons & Paroles*[46] "that § 1997e(d) is constitutional is . . . binding, and it's simply 'not the place of a district court to decide when a circuit precedent is overruled or abrogated to the point that it is no longer binding on lower courts.'"[47] The court then explained that "[s]uch decisions 'remain[] the exclusive domain for the circuit court[s]."[48] Appellant briefly notes here the district court's error in finding that *Jackson* addressed the question of § 1997e(d)'s constitutionality with respect to prisoners receiving monetary relief in comparison to prisoners receiving injunctive or declaratory relief.[49]

## III.   Statutory Background

The PLRA was first introduced in May 1995 by Senators Robert Dole, Jon Kyl, and Orrin Hatch as a freestanding bill.[50] Its express purpose was to "reform

---

[46] 331 F.3d 790, 796 (11th Cir. 2003).

[47] Doc. 340 at 4.

[48] *Id.* (quoting *Mosby v. City of Byron, Georgia*, No. 5:20-CV-00163-TES, 2021 WL 297129 (M.D. Ga. Jan. 28, 2021), *aff'd,* No. 21-10377, 2022 WL 1136835, at *4 (11th Cir. Apr. 18, 2022)).

[49] 331 F.3d at 796 ("Jackson contends that § 1997e(d) violates his right to equal protection under the Fifth Amendment by restricting the attorney's fees awards of *prisoners* while permitting other litigants to recover full attorney's fees awards.").

[50] *See* Prison Litigation Reform Act of 1995, S. 866, 104th Cong. (1995).

#5076945v1

prison litigation"[51] in light of what Senator Dole referred to as an "explosion in the number of lawsuits filed by State and Federal prisoners."[52] When introducing the bill, Senator Dole indicated that "[f]rivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population."[53] He then proclaimed that "prisons should be prisons, not law firms."[54] For this reason, the May 1995 version of the PLRA "require[d] prisoners who file lawsuits to pay the full amount of their court fees and other costs."[55] There was no mention of attorneys' fees in this version of the PLRA.[56] The May 1995 version of the PLRA failed to pass.[57]

In September 1995, a new version of the PLRA was incorporated into appropriations bill H.R. 2076.[58] This version of the PLRA had the express purpose "[t]o provide for appropriate remedies for prison condition lawsuits, and to

---

[51] *Id.*

[52] 141 Cong. Rec. S7524 (1995).

[53] *Id.*

[54] *Id.*

[55] *Id.* at S7525.

[56] Prison Litigation Reform Act of 1995, S. 866, 104th Cong. (1995).

[57] *See id.*; https://www.congress.gov/bill/104th-congress/senate-bill/866 (displaying the final status of the bill as "[i]ntroduced); Ann H. Mathews, The Inapplicability of the Prison Litigation Reform Act to Prisoner Claims of Excessive Force, 77 N.Y.U. L. Rev. 536, 574, n. 59 (2002).

[58] Department of Commerce and Related Agencies Appropriations Act, 1996, H.R. 2076, 104th Cong. (1995-1996).

11

discourage frivolous and abusive prison lawsuits."[59] The September 1995 version of the PLRA included the provision on attorneys' fees that is included in the PLRA today.[60] Much of the Senate debate about the PLRA occurred as this version of the statute made its way through congressional process.[61]

Like the May 1995 discussion of the PLRA, the September 1995 discussion of the PLRA primarily concerned the filing of *pro se* prisoner lawsuits. For example, when Senator Hatch offered the new version of the PLRA as an amendment to H.R. 2076, he stated: "This landmark legislation will help bring relief to a civil justice system overburdened by frivolous prisoner lawsuits. *Jailhouse lawyers* with little better to do are tying our courts in knots with the endless flow of frivolous litigation."[62] A second senator similarly added that "[w]e need to put a stop to these *jailhouse lawyers* who are making a mockery of our criminal justice system."[63] However, some senators went further to discuss prisoners' allegedly privileged status. For example, Senator Kyl stated: "there is one other thing that [the PLRA] will do. I think it begins to send a message that prison is not necessarily a nice place.

---

[59] S. Amdt. 2838 to H.R. 2076, 104th Cong. (1995-1996); https://www.congress.gov/amendment/104th-congress/senate-amendment/2838) (*see* "[p]urpose" section).

[60] *Id.*

[61] *Compare* 141 Cong. Rec. S14626-29 (1995 WL 573055) *with* 141 Cong. Rec. S7524-S7528.

[62] 141 Cong. Rec. S14626 (1995 WL 573055).

[63] 141 Cong. Rec. S14628 (1995 WL 573055).

12

You do not have extra privileges when you go to prison. You certainly ought not to be treated any better than the average citizen."[64]

While the September 1995 version of the PLRA included the attorneys' fee provision at issue in this appeal, President Bill Clinton vetoed that version.[65] However, Congress ultimately passed the PLRA during its next term as a rider to an omnibus appropriations bill that President Clinton signed into law on April 26, 1996.[66] The legislation was not subject to committee markup, and the committee did not furnish a report detailing the PLRA's likely effects.[67]

The Supreme Court has repeatedly found that Congress passed the PLRA to "ensur[e] that the flood of nonmeritorious [prisoner] claims does not submerge and effectively preclude consideration of the allegations with merit."[68] "To that end,

---

[64] 141 Cong. Rec. S14628-29 (1995 WL 573055).

[65] *See* H.R. 2076, 104th Cong. (1995); https://www.congress.gov/bill/104th-congress/house-bill/2076 (noting that the bill "[f]ailed to pass over veto").

[66] Omnibus Consolidated Rescissions and Appropriations Act of 1996, H.R. 3019, 104th Cong. (1996).

[67] 142 Cong. Rec. S2296 (1996) (statement of Sen. Kennedy) ("[T]he effort to enact this proposal as part of an omnibus appropriations bill is inappropriate. Although a version of the PLRA was introduced as a free-standing bill and referred to the Judiciary Committee, it was never the subject of a committee mark-up, and there is no Judiciary Committee report explaining the proposal. The PLRA was the subject of a single hearing in the Judiciary Committee, hardly the type of thorough review that a measure of this scope deserves.").

[68] *Jones v. Bock*, 549 U.S. 199, 203 (2007).

13

Congress [purportedly] enacted a variety of reforms[, including the attorney fee cap,] designed to filter out the bad claims and facilitate consideration of the good."[69]

## IV.    Standard of Review

"This Court reviews the constitutionality of a statute *de novo*."[70] Further, this Court "do[es] not defer to [a] district court's conclusion that [a party] purportedly waived [certain legal] arguments when [it is] assessing waiver for appellate purposes."[71] "Although [the Court] review[s] for an abuse of discretion a district court's determination that a party waived an affirmative defense by not making it at the appropriate time or waived apportionment of damages by making an inconsistent argument, whether a party has waived an issue for purposes of appeal is a matter that [this Court] must assess *de novo*."[72]

## SUMMARY OF THE ARGUMENT

The district court should not have applied 42 U.S.C. § 1997e(d)'s attorney fee restrictions to Appellant's request for his full reasonable attorneys' fees under 42 U.S.C. § 1988 because § 1997e(d) is unconstitutional.

---

[69] *Id.* at 204.
[70] *United States v. Horne*, 789 F. App'x 139, 141 (11th Cir. 2019) (citing *United States v. White*, 593 F.3d 1199, 1205 (11th Cir. 2010)).
[71] *ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, No. 22-10811, 2024 WL 3975776, at *3 (11th Cir. Aug. 29, 2024).
[72] *Id.*

14

*First,* § 1997e(d) violates Appellant's right to equal protection by (1) irrationally treating Appellant, as a prisoner with a proven constitutional rights violation, differently than unincarcerated individuals with proven constitutional rights violations; and (2) irrationally treating Appellant, as a prisoner who recovered monetary damages, differently than prisoners who are awarded injunctive or declaratory relief. Indeed, pursuant to *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 533 (1973), and other binding Supreme Court precedent, § 1997e(d) bears no *rational* relationship to any "independent and legitimate legislative end." *Romer v. Evans*, 517 U.S. 620, 633 (1996).

*Second*, Appellant's argument that he is entitled to his full reasonable attorneys' fees under 42 U.S.C. § 1988 because § 1997e(d) is unconstitutional is properly before this Court. This Circuit has explained that "there is a difference between raising new issues and making new arguments on appeal." *In re Home Depot Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019). "If an issue is properly presented, a party can make any argument in support of that issue" on appeal. *Id.* (internal quotations and citations omitted alteration adopted); *Bourtzakis v. United States Att'y Gen.*, 940 F.3d 616, 621 (11th Cir. 2019). Here, Appellant properly raised the *issue* that he is entitled to his full reasonable attorneys' fees pursuant to § 1988 in his opening fee petition by requesting his full reasonable attorneys' fees at his attorneys' full reasonable billing rates.

15

*Third*, to the extent that this Court finds that the issue presented and forfeited was whether § 1997e(d) is constitutional, this Court should still consider § 1997e(d)'s constitutionality. The Eleventh Circuit has "identified five situations in which [it] may exercise [its] discretion to consider a forfeited issue," including when "(1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party lacked an opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern." *United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022), *cert. denied,* 143 S. Ct. 95 (2022). At least three of these exceptions warrant the Court's consideration of the constitutional issues and interests raised by this appeal.

## ARGUMENT AND CITATION OF AUTHORITY

I.     **The district court erred by applying 42 U.S.C. § 1997e(d) to Appellant's attorney fee request under 42 U.S.C. § 1988 because § 1997e(d)'s limits on prisoners' attorney fee awards are unconstitutional.**

Section 1997e(d)'s limits on Plaintiff's § 1988 attorneys' fees violate Plaintiff's right to equal protection by (1) irrationally treating Plaintiff, as a prisoner with a proven constitutional rights violation, differently than unincarcerated individuals with proven constitutional rights violations; and (2) irrationally treating

Plaintiff, as a prisoner who recovered monetary damages, differently than prisoners who are awarded injunctive or declaratory relief.

Since its adoption, § 1997e(d) has been challenged on equal protection grounds due primarily to the limits the statute imposes exclusively on prevailing prisoner plaintiffs under § 1988. While most circuit courts have found that § 1997e(d)'s limits on prisoner plaintiffs attorneys' fees pass constitutional muster, most circuit courts (including the Eleventh Circuit) have failed to consider controlling Supreme Court case law in their analysis. Under controlling Supreme Court precedent, § 1997e(d)'s limits on prisoner plaintiffs attorneys' fees undoubtedly violate prisoner plaintiffs' right to equal protection under the Due Process Clause of the Fifth Amendment. Indeed, no legitimate government interest is *rationally* related to the attorney fee provision in the PLRA, which reduces the attorneys' fees of *prevailing* prisoner plaintiffs—that is, prisoners who have *already established* that their claims are meritorious. This is especially true because § 1988 and other sections of § 1997e already work together to achieve the only legitimate government interests purportedly served by the statute – reduction of frivolous and supposedly "low-value" prisoner lawsuits. Further, by arbitrarily treating prisoners who receive an award of monetary damages differently than those who receive an award of injunctive or declaratory relief, § 1997e(d) violates prisoner plaintiffs' Fifth Amendment right to equal protection.

17

**A.     The Fifth Amendment guarantees equal protection of the laws to all persons, including prisoners.**

Before we turn to the text of § 1997e(d), it is important to understand the right the Fifth Amendment protects. The Fifth Amendment commands that no person shall be "deprived of life, liberty, or property, without due process of law."[73] Like the Equal Protection Clause of the Fourteenth Amendment,[74] the "Liberty Clause" of the Fifth Amendment "contains within it [a] prohibition against denying to any person the equal protection of the laws."[75] Indeed, the Fifth Amendment's equal protection guarantee prohibits the "indiscriminate imposition of inequalities"[76] and "withdraws from [g]overnment the power to degrade or demean" particular groups.[77] That is because "[c]entral both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance."[78]

While the Fifth Amendment's equal protection guarantee "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons," legislative classifications

---

[73] U.S. Const. amend. v.

[74] The Fourteenth Amendment states: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. xiv, cl. 1.

[75] *United States v. Windsor*, 570 U.S. 744, 774 (2013).

[76] *Romer*, 517 U.S. at 633.

[77] *Windsor*, 570 U.S. at 774.

[78] *Romer*, 517 U.S. at 633 (emphasis added).

18

must *at the very least* "bear[] a rational relation to some legitimate end."[79] "By requiring that the classification bear a rational relationship to an independent and legitimate legislative end, [federal courts] ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law."[80]

"Under traditional equal protection analysis, a legislative classification must be sustained, if the classification itself is rationally related to a legitimate governmental interest."[81] Although the rational basis standard is highly deferential to the government, it is not "toothless."[82] Indeed, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."[83] And the state is not permitted to treat "similarly situated" groups differently.[84] Finally, certain objectives, such as "a bare congressional desire to harm a politically unpopular group," are not legitimate governmental interests.[85]

---

[79] *Id.* at 631.
[80] *Id.* at 633.
[81] *Moreno*, 413 U.S. at 533.
[82] *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).
[83] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).
[84] *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
[85] *Moreno*, 413 U.S. at 534.

#5076945v1

**B.      42 U.S.C. § 1997e(d) violates Plaintiff's right to equal protection.**

Section 1997e(d) restricts the award of attorneys' fees authorized under §

1988 in cases (a) "brought by a prisoner" under § 1983 (b) where "*a monetary*

*judgment* is awarded." The statute provides:

**(1)** In *any action brought by a prisoner* who is *confined to any jail, prison, or other correctional facility*, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--

   **(A)** the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

   **(B) (i)** the amount of the fee is proportionately related to the court ordered relief for the violation; or
   **(ii)** the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

**(2)** *Whenever a monetary judgment is awarded* in an action described in paragraph (1), *a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.*

**(3)** *No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.*

**(4)** Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the

20

individual rather than by the defendant pursuant to section 1988 of this title.[86]

More specifically, § 1997e(d) requires a court to reduce a portion of a plaintiff's judgment (not to exceed 25%) in order to satisfy a portion of the plaintiff's attorney fee award. It also limits the substantive amount of attorneys' fees paid by a defendant to 150% of the amount of the monetary judgment awarded as damages to the prevailing plaintiff in the case. Finally, the statute caps the hourly rate that courts can utilize when calculating a plaintiff's fee award at 150 percent of the rates payable to appointed counsel in criminal cases.

Section 1997e(d) applies only to individuals who are incarcerated in jails, prisons, or other correctional facilities. It matters not whether the individual has been convicted of a crime. Instead, § 1997e(d) applies to "any person incarcerated or detained in any facility who is *accused* of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."[87] Additionally, it matters not whether a prisoner's lawsuit concerns events that occurred prior to his incarceration and/or unrelated to his prison conditions, as § 1997e(d) applies to "*any action* brought by a prisoner."[88] However, if a previously incarcerated individual files a

---

[86] 42 U.S.C. § 1997e(d) (emphases added).

[87] *Id.* § 1997e(h).

[88] *Id.* § 1997e(d)(1).

21

civil rights lawsuit specifically related to his prison conditions after his release from confinement, § 1997e(d)'s restrictions on attorneys' fees do not apply to him or her. Further, § 1997e(d) inexplicably applies only to incarcerated individuals who receive a monetary judgment. It does not apply to individuals who receive declaratory or injunctive relief. It matters not whether the defendant's unconstitutional behavior stopped only after a prisoner plaintiff awarded money damages filed a lawsuit.

In short, § 1997e(d) asks (1) "is the civil rights plaintiff who is entitled to attorneys' fees incarcerated?" and (2) "was the incarcerated plaintiff awarded money damages?" If (and only if) the answer to each of these questions is yes, then § 1997e(d) requires that the plaintiff be treated differently than all other civil rights plaintiffs entitled to attorneys' fees under § 1988.

Section 1988 was specifically passed "to ensure effective access to the judicial process for persons with civil rights grievances," including prisoners.[89] Indeed, when the Supreme Court affirmed in *Alyeska Pipeline Service Co. v. Wilderness Society*[90] "the 'American Rule' that each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary," Congress responded promptly by enacting "the Civil Rights Attorney's Fees Awards Act of 1976, [] § 1988, authorizing the district courts to award a reasonable

---

[89] *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal citation and quotations omitted).
[90] 421 U.S. 240 (1975).

attorney's fee to prevailing parties in civil rights litigation."[91] At the time, under §

1988, all prevailing plaintiffs were entitled to recover their reasonable attorneys' fees

"unless special circumstances would render such an award unjust."[92]

With the passage of § 1997e(d), prisoners are no longer entitled to their full

reasonable attorneys' fees under § 1988. Such differential treatment is not rationally

related to any legitimate government interest and serves only to impose a special

disability on prisoners awarded monetary damages due to proven civil rights

violations.

Each circuit court to consider whether § 1997e(d) rationally relates to a

legitimate government interest has found that the statute rationally relates to

reducing frivolous prisoner lawsuits.[93] However, that rationale is illogical and

untenable; by its own terms, § 1997e(d) limits attorneys' fees recoverable by only

those prisoners who *prevail* on their civil rights claims.

Moreover, where a "politically unpopular group" is involved and other

provisions or laws already achieve the governmental interest that the challenged

classification purports to further, "[t]he existence of these provisions [or laws]

necessarily casts considerable doubt upon the proposition that the [challenged

classification] could rationally have been intended to [achieve the governmental

---

[91] *Hensley*, 461 U.S. at 429.

[92] *Id.* quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400 (1968).

[93] *See e.g., Jackson*, 331 F.3d 790.

interest]."[94] Prisoners are undoubtedly politically unpopular.[95] Further, nearly every other subsection of § 1997e works to reduce the filing of frivolous prisoner lawsuits – especially § 1997e's exhaustion provision, which was the "centerpiece of the PLRA's effort" [96] "to reduce the quantity and improve the quality of prisoner suits."[97]

Therefore, it is doubtful that § 1997e(d)'s classification could rationally have been intended to specifically deter frivolous lawsuits. This is particularly true where § 1997e(d) differentiates between prisoners who receive monetary damages and those who receive injunctive or declaratory relief.

Some circuit courts have found that § 1997e(d) does not violate equal protection when comparing prisoners to non-prisoners because the statute rationally relates to the purportedly legitimate goal of reducing the filing of civil rights lawsuits that, while not technically frivolous, are marginal or trivial.[98] The rationale for this

---

[94] *Moreno*, 413 U.S. at 534, 536–37; *See also Cleburne.*, 473 U.S. 432 (using rational basis review to invalidate a zoning ordinance that prevented the operation of a home for the mentally disabled).

[95] *See Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001) ("We admit to being troubled by a federal statute that seeks to reduce the number of meritorious civil rights claims and protect the public fisc at the expense of denying a politically unpopular group [i.e., prisoners] their ability to vindicate actual, albeit 'technical,' civil rights violations."); *Foulk v. Charrier*, 262 F.3d 687, 704 (8th Cir. 2001) (same).

[96] *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

[97] *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

[98] *See e.g.*, *Jackson*, 331 F.3d at 798.

24

#5076945v1

argument is that, in the hopes of garnering a windfall fee award, attorneys will file actions on behalf of prisoners that, although meritorious, are "low-value" because they result in low damages awards. Therefore, according to these courts, limiting attorneys' fees will discourage attorneys and their prisoner clients from clogging up the courts with their "low-value" civil rights lawsuits.

However, no court has considered whether such a goal is *legitimate* under equal protection principles and controlling Supreme Court case law, particularly when the Supreme Court (and this Circuit) acknowledge that § 1988 and the lodestar method of calculating fees were specifically designed to avoid giving attorneys windfalls.[99] Further, no court has sanctioned the theory that the size of a damages award necessarily reflects the value of a *civil rights* case. In fact, in *City of Riverside v. Rivera*, the Supreme Court rejected the notion that "fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."[100] Rebuffing the view that "a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated," the Supreme Court explained that "a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot

---

[99]*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("Section 1988's aim is to enforce the covered civil rights statutes, not to provide a form of economic relief to improve the financial lot of attorneys.") (internal quotation omitted).
[100] 477 U.S. 561, 574 (1986).

25

#5076945v1

be valued solely in monetary terms."[101] That is because "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff."[102] Therefore, "[r]egardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."[103]

The Supreme Court then made clear that: "[a] rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988."[104] Indeed, "Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process."[105] And "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts."[106] It is therefore unclear why such logic would not also apply to prisoner plaintiffs who receive a monetary judgment.

---

[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.* at 576.
[105] *Id.*
[106] *Id.* at 578.

26

Further, "Congress enacted § 1988 specifically to enable plaintiffs to enforce the civil rights laws *even where the amount of damages at stake would not otherwise make it feasible for them to do so.*"[107] Again, it is unclear why *prisoners'* civil rights should not be vindicated even where the amount of damages at stake would not otherwise make it feasible for them to do so.

For all of these reasons, reducing the filing of so called low-value civil rights lawsuits, measured by their pecuniary value, cannot form a legitimate interest supporting prisoners' differential treatment, particularly those receiving monetary damages. At the very least, there is no logical reason to treat prisoners' low-value suits as different than other individuals' low-value suits.

Additionally, protecting the public fisc cannot justify treating prisoners who recover monetary judgments differently from prisoners who obtain injunctive or declaratory relief. The Supreme Court has previously held that such discrimination against a specific, unpopular class cannot be justified on cost-cutting grounds because, "[o]f course, a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources."[108]

---

[107] *Id.* at 577 (emphasis added).

[108] *Plyler v. Doe*, 457 U.S. 202, 227 (1982) (citing *Graham v. Richardson*, 403 U.S. 365, 374–75 (1971)); *see also Rinaldi v. Yeager*, 384 U.S. 305, 310 (1966) ("Apart from its fiscal objective, the only other purpose of this law advanced by the appellees is the deterrence of frivolous appeals. Assuming a law enacted to perform that function to be otherwise valid, the present statutory classification is no less vulnerable under the Equal Protection Clause when viewed in relation to that

Like the public fisc rationale, none of the purported government interests previously found to rationally relate to § 1997e(d)'s fee restrictions withstand scrutiny under binding Supreme Court caselaw. This is likely because the PLRA was particularly focused on curbing litigation from pro se litigants or "jailhouse lawyers." Unlike the rest of the PLRA, as drafted § 1997e(d)'s classifications evince a bare desire to harm prisoners, as a purportedly privileged group. As Senator Kyl stated, the PLRA was intended to "send a message [to prisoners] that prison is not necessarily a nice place. You do not have extra privileges when you go to prison. You certainly ought not to be treated any better than the average citizen."[109] This is an improper basis for § 1997e(d)'s classifications. "Because § 1997e(d)'s classifications based on incarceration status and relief status cannot be sustained by reference to a legitimate government purpose, they do not pass constitutional muster and are violative of Appellant's right equal protection.

## II.   The district court erred in holding that Appellant forfeited[110] the *argument* that he is entitled to his full reasonable attorneys' fees under § 1988 specifically because § 1997e(d)'s restrictions on attorneys' fees are unconstitutional.

This Circuit has explained that "there is a difference between raising new issues and making new arguments on appeal."[111] "If an issue is properly presented,

---

function. By imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed.").

[109] 141 Cong. Rec. S14628-29 (1995 WL 573055).

[110] "Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." *Campbell*, 26 F.4th at 872 (quoting *Kontrick v. Ryan*, 540 U.S. 443 (2004)).

[111] *Home Depot*, 931 F.3d at 1086.

28

a party can make any argument in support of that issue" on appeal.[112] Indeed, "parties are not limited to the precise arguments they made below."[113] And where an appellant has not "change[d] [his] requested relief," this Court has found that he does not present a new issue.[114]

In *Home Depot*, Home Depot asked the district court not to apply a multiplier" in making its fee award, arguing that the required factors were not satisfied. "On appeal, Home Depot makes the same request, albeit for different (and contradictory) reasons," specifically that a multiplier was unavailable as a matter of law. That was a new argument, but it was permissibly raised on appeal in support of that same request. Id. at 1086. See *Ohneck v. Comm'r*, Soc. Sec. Admin., No. 22-13984, 2023 WL 8946613, at *1 (11th Cir. Dec. 28, 2023) ("In *In re Home Depot Inc.*, we held that Home Depot made new arguments on appeal, rather than raise a new issue, where it relied on a new line of precedent but did not change its requested relief."); *Smith v. Soc. Sec. Admin., Comm'r*, No. 22-11407, 2023 WL 6938521, at *3 (11th Cir. Oct. 20, 2023) ("What matters is whether a party 'makes the same request'.").

Here Appellant asked the district court for a full award of his reasonable fees under § 1988. The unconstitutionality of 1997e(d)'s limitation is no newer than

---

[112] *Id.* (internal quotations and citations omitted alteration adopted); *Bourtzakis*, 940 F.3d 616, 621.
[113] *Home Depot*, 931 F.3d at 1086.
[114] *Id.*

29

#5076945v1

Home Depot's appellant position that the governing law categorically barred any multiplier, regardless of the facts. And in this case, as noted below, Appellant raised the issue in time for a district court ruling - something that was not true in Home Depot.

Appellant properly raised the *issue* that he is entitled to his full reasonable attorneys' fees pursuant to § 1988 in his opening fee petition. The district court therefore wrongly held that Appellant was not permitted to raise the *argument* that he is entitled to his full reasonable attorneys' fees under § 1988 specifically because § 1997e(d)'s restrictions on attorneys' fees are unconstitutional. At the very least, the issue of Appellant's entitlement to his full reasonable attorneys' fees pursuant to § 1988 is not forfeited for the purposes of this appeal.

As in Home Depot, Appellant's request for relief did not change. In his fee petition,[115] Appellant requested his full reasonable attorneys' fees pursuant to § 1988 and consequently that § 1997e(d)'s restrictions should not apply. In doing so, Appellant properly raised the *issue* that he was entitled to his full reasonable attorneys' fees under federal law. In fact, Appellant requested "an attorney fee award of $218,515.00" based on his counsel's hourly billing rates of $600, $650, $700, $750, and $825.[116] He also presented evidence that his attorneys' rates were

---

[115] *See* Doc. 325.
[116] *Id.* at 2.

#5076945v1

reasonable in the Middle District of Georgia and that the time his attorneys spent litigating his case were reasonable and necessary.[117]

Appellees then opposed to Appellant's request for his full reasonable attorneys' fees by arguing that, pursuant to § 1997e(d), Appellant's fees were capped at 150% of his monetary judgment less 25% of the judgment, which Appellant was statutorily required to contribute to the payment of his attorneys' fees.[118] Appellant replied in turn, arguing that § 1997e(d)'s restrictions on attorneys' fees were unconstitutional because they violated his right to equal protection.[119] In other words, request, followed by opposition, followed by a rebuttal to the grounds raised in opposition. This is a proper and permissible sequence of argument. Although, in an exercise of candor, Appellant previewed the *argument* in his opening brief that he was entitled to his full attorneys' fees specifically because § 1997e(d) is unconstitutional, he was not required to do so. This is particularly true where § 1997e(d)'s application was Appellee's defense to raise (which Appellee in fact raised). Instead, Appellant properly raised the issue of his entitled to his full reasonable attorneys' fees pursuant to § 1988 in his opening brief in support of his fee petition by asking for his full reasonable attorneys' fees at his attorneys' full reasonable rates. Appellant should not be worse off because he previewed his

---

[117] *See* Doc. 325-1.
[118] Doc. 332.
[119] *See* Doc. 336.

31

intended response if Appellee invoked § 1997e(d)'s cap, rather than remaining silent in his request. Appellant now asks for the same relief from this Court, and this Court should consider any purportedly new argument in support of Appellant's requested relief.[120]

Furthermore, this Court has recognized that an issue is preserved for appeal when it is "present[ed] [] to the district court in a manner that allows the court to recognize and rule on it."[121] Even if one characterized § 1997e(d)'s constitutionality as the "issue," rather than an "argument" supporting the issue of whether Appellant is entitled to the full reasonable fees expended, Appellant presented the issue to the district court in a manner that allowed the court to recognize and rule on it. In fact, the Court expressly acknowledged Appellant's constitutional argument: "Nevertheless, [Appellant] asks the Court to ignore the statutory restriction identified in § 1997e and calculate his attorneys' fees 'using the attorneys' hourly rates and time spent' on various motions, trial preparation, voir dire, and trial. In other words—declare the cap unconstitutional."[122] And then the Court ruled on the issue holding that the Eleventh Circuit's holding in *Jackson v. State Bd. of Pardons*

---

[120] *Smith*, 2023 WL 6938521, at *3 ("If an issue is properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below.") (internal quotations omitted).

[121] *Jones v. Georgia Ports Auth.*, No. 22-12844, 2024 WL 470347, at *5 (11th Cir. Feb. 7, 2024).

[122] Doc. 340 at 1 (internal citation omitted).

32

*& Paroles*[123] "that § 1997e(d) is constitutional is . . . binding, and it's simply 'not the place of a district court to decide when a circuit precedent is overruled or abrogated to the point that it is no longer binding on lower courts.'"[124]

So, for multiple reasons, the district court wrongly concluded that Appellant had forfeited the "issue" of § 1997e(d)'s constitutionality. Section 1997e(d)'s constitutionality is an *argument* supporting the *issue* of whether the district court should grant Appellant's request for a full reasonable fee. Under *Home Depot*, that distinction is pivotal. Here, as in *Home Depot*, Appellant's request for relief did not change. And, unlike *Home Depot*, Appellant obtained a district court ruling by properly raising that issue as a rejoinder to the Appellee's invocation of that statute in opposition to his request.

### III. Even if this Court finds that Appellant forfeited the purported "issue" of 1997e(d)'s constitutionality, this Court should still consider the issue.

To be clear, the issue that Appellant presented below was his entitlement to his full reasonable attorneys' fees pursuant to § 1988. However, to the extent that this Court finds that the issue presented and forfeited was whether § 1997e(d) is constitutional, this Court should still consider § 1997e(d)'s constitutionality. The general rule that an issue will not be considered by this Court if it was "not raised in the district court and raised for the first time in an appeal" may be waived "in certain

---

[123] 331 F.3d 790, 796 (11th Cir. 2003).
[124] Doc. 340 at 4.

exceptional circumstances."[125] Indeed, "[t]he question of whether to hear a claim not raised in the district court is ultimately one that falls within the sound discretion of the Court."[126] Because § 1997e(d) implicates the equal protection rights of prisoners nationwide and this appeal raises purely legal issues, this Court should exercise its discretion to evaluate the constitutionality of § 1997e(d).

The Eleventh Circuit has "identified five situations in which [it] may exercise [its] discretion to consider a forfeited issue," including when "(1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party lacked an opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern." [127] At least three of these exceptions warrant the Court's consideration of the constitutional issues and interests raised by this appeal.

First, the constitutional issue raised here undoubtedly "involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." In *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, this Court considered whether it should exercise its discretion to examine the constitutionality of Fla. Stat.

---

[125] *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.*, 816 F.3d 1343, 1349 (11th Cir. 2016) (citation omitted).
[126] *Id.*
[127] *Campbell*, 26 F.4th at 873 (11th Cir.).

§ 30.2905. With limited discussion, the Court explained that whether the statute was constitutional was "quintessentially a legal question and one for which the factual record is complete."[128] The Court then turned to the question of "whether the failure to consider this pure question of law would result in a miscarriage of justice."[129] It explained that "*any wrong result resting on the erroneous application of legal principles is a miscarriage of justice in some degree.*"[130] However, it also noted that the Eleventh Circuit "has not been particularly strict in the application of the 'miscarriage of justice' requirement."[131] Indeed, in *Akanthos Capital Mgmt., LLC v. CompuCredit Holdings Corp.,*[132] the Court decided to hear an issue not previously raised in the trial court based solely on the fact that "it presented a pure question of law and an issue of general impact."[133] Ultimately, the *Blue Martini* panel held that the appellant company would suffer a miscarriage of justice if it were subjected to a due process violation inconsistent with its substantial rights.[134]

Like the question of whether Fla. Stat. § 30.2905 was constitutional, the question of whether § 1997e(d) is constitutional is "quintessentially a legal question and one for which the factual record is complete." Furthermore, Appellant would

---

[128] *Blue Martini*, 816 F.3d at 1349.
[129] *Id.*
[130] *Id.* (citation omitted and alteration adopted).
[131] *Id.* at 1350.
[132] 677 F.3d 1286, 1292 (11th Cir. 2012).
[133] *Blue Martini*, 816 F.3d at 1350 (citing *Akanthos*, 677 F.3d at 1292).
[134] *Id.* at 1350.

#5076945v1

undoubtedly suffer a miscarriage of justice by being subjected to a violation of his equal protection rights under the Fifth Amendment's Due Process Clause. For these reasons alone, this Court should exercise its discretion to hear Appellant's constitutional challenge under the first forfeiture exception.

Second, "the interest of substantial justice is [certainly] at stake" in this appeal. The "substantial justice" forfeiture exception has been applied to cases where fundamental constitutional rights are implicated.[135] Certainly, the right to equal protection is fundamental, and the Court should apply the "substantial justice" forfeiture exception in this case. Third and finally, the equal protection issue here "presents significant questions of general impact and great public concern." "This exception is generally reserved for cases regarding a policy with national application."[136] Here, the constitutionality of § 1997e(d) will have national consequences, as § 1997e(d) has been having national consequences since the statute was passed. Indeed, § 1997e(d) impacts all incarcerated persons whose

---

[135] *In re Biscayne Park, LLC*, 540 F. App'x 952, 958 (11th Cir. 2013) ("[T]his Court has generally limited the substantial justice exception to '"the vindication of fundamental constitutional rights."'") (quoting *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1207 (11th Cir. 1989)); *see, e.g.*, *United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998) (reviewing constitutionality challenge despite not being preserved for appeal).

[136] *Biscayne Park*, 540 F. App'x at 958; *see also Blue Martini*, 816 F.3d at 1350 (examining a forfeited constitutional challenge where the issue was "not, perhaps, of 'transcending public importance'" because the purportedly unconstitutional statute "affect[ed] the obligations and rights of many employers . . . in a large metropolitan area that regularly hire moonlighting officers.") (citation omitted).

#5076945v1

constitutional rights have been violated and who are awarded monetary damages as a result of the constitutional violation. For this reason as well, this Court should exercise its discretion to hear Appellant's constitutional challenge.

Importantly, Appellees would suffer no prejudice if this Court considers Appellant's constitutional challenge. "At the heart of [the forfeiture] rule is the concept that 'a court will not consider on appeal for the first time a question that requires development of factual issues.'"[137] Here, none of the parties' arguments require further development of the factual record. Further, Appellants previously drafted a brief to respond to Plaintiff's constitutionality argument[138] and will have an opportunity to more fully present their legal arguments to this Court – the only court (besides the Supreme Court) authorized to overturn *Jackson v. State Bd. of Pardons & Paroles*, with respect to the constitutionality of § 1997e(d) when considering prisoners in comparison to unincarcerated persons and the only court that can newly establish precedent with respect to the constitutionality of § 1997e(d) when comparison prisoners who receive monetary judgments with prisoners who receive declaratory or injunctive relief.[139]

---

[137] *Akanthos*, 677 F.3d at 1291 quoting *Troxler v. Owens-Ill, Inc.*, 717 F.2d 530, 533 (11th Cir. 1983).

[138] Doc. 338 at 1 ("Plaintiff has filed a reply in support of his fee petition that raises arguments that were not previously made and that cites authorities that were not previously cited in his motion for fees. *See* Doc. 336, 337. Defendants have prepared a surreply to address these new arguments. The surreply is eight (8) pages in length."

[139] 331 F.3d 790.

37

#5076945v1

As our Supreme Court has admonished, "[o]rderly rules of procedure do not require sacrifice of the rules of fundamental justice."[140] Instead, "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them," and "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy."[141]

## CONCLUSION

This Court should vacate the district court's order and remand with instructions to award full reasonable attorneys' fees under § 1988.

Respectfully submitted this 6th day of September, 2024.

*/s/ Amanda D. Bradley*

Manoj S. Varghese
Georgia Bar No. 734668
Jeffrey W. Chen
Georgia Bar No. 640207
Amanda D. Bradley
Georgia Bar No. 560602

BONDURANT MIXSON
 & ELMORE LLP
1201 West Peachtree Street NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4104
varghese@bmelaw.com
chen@bmelaw.com
bradley@bmelaw.com

*Attorneys for Appellant-Plaintiff*
*Ricky Johnson*

---

[140] *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).
[141] *Id.*

#5076945v1

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains a total of 8,656 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f) and 11th Cir. R. 32-4.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on September 6, 2024.

*/s/ Amanda D. Bradley*

CERTIFICATE OF COMPLIANCE

#5076945v1

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Counsel for all parties will be served with the foregoing document by the Court's CM/ECF System.

*/s/ Amanda D. Bradley*

CERTIFICATE OF SERVICE

#5076945v1